IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

KELLY J. S.,

                       Plaintiff,

          v.                            Civil Action No.
                                     5:21-CV-1290 (DNH/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.

─────────────────────────────────────

APPEARANCES:                       OF COUNSEL:

FOR PLAINTIFF

OLINKSY LAW GROUP          ANDREW  FLEMMING, ESQ.
250 South Clinton Street, Suite 210   HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.       KRISTINA D. COHN, ESQ.
OFFICE OF GENERAL COUNSEL  MICHAEL L. HENRY, ESQ.
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

### REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §

405(g), to challenge a determination of the Commissioner of Social

Security ("Commissioner") finding that she was not disabled at the relevant

times and, accordingly, is ineligible for the disability insurance ("DIB")

benefits for which she has applied.  The matter has been referred to me for

the issuance of a report and recommendation, pursuant to 28 U.S.C. §

636(b) and Northern District of New York Local Rule 72.3.  For the reasons

set forth below, I recommend a finding that the Commissioner's

determination did not result from the application of proper legal principles

and is not supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in October of 1985, and is currently thirty-seven

years of age.  She was twenty-nine years old on February 12, 2015, the

date she alleges she became disabled, and thirty years old on February 24,

2016, the date upon which she filed her application for benefits.[1]  Plaintiff

measures five feet and seven inches in height, and weighed approximately

two hundred and forty-eight pounds during the relevant period.  Plaintiff

lives with her husband and teenage son in a house in Fulton, New York.

Plaintiff reports that she graduated high school and completed

vocational training to be a certified nursing assistant ("CNA"), but she never

---

[1]    Plaintiff was insured for benefits under Title II until December 31, 2021.

2

worked in that field.  She most recently worked cleaning an office building, but stopped working even part time in early 2018 because the work was getting to be too much for her to do.

Plaintiff alleges that she suffers from bulging and herniated discs, fibromyalgia, anemia, history of pulmonary embolisms, pleurisy, polycystic ovarian syndrome with hysterectomy, a methicillin-resistant staphylococcus aureus ("MRSA") infection, anxiety, and depression.  As is relevant to her application, plaintiff has treated for her impairments with Oswego Hospital, Hematology and Oncology Associates, New York Spine and Wellness, Arthritis Health Associates, Syracuse Orthopedic Specialists, North Country Orthopedic Specialists, Central Square Family Chiropractic, the Upstate University Health System, Samaritan Health, and sources at Fulton Health/ConnextCare, including primary care physician Dr. Anthony Rotella.

Plaintiff alleges that she is primarily debilitated by her pain and inability to function resulting from her fibromyalgia and lumbar spine impairment.  She experiences daily pain with additional flares of worsening fibromyalgia symptoms that occur approximately twelve times per month. She has also been diagnosed with a connective tissue disorder that impacts her ability to engage in physical activity. Plaintiff reports that her husband does many of the chores around the house or has to help her to

3

do things.  She can clean dishes sitting in a chair, but sometimes drops

things if her hands go numb.  She can sweep and do light vacuuming,

cook, and do laundry, but her son and husband have to help her to lift

things when doing those tasks.  Plaintiff additionally reports that she needs

help getting in and out of chairs or the shower, cannot drive long distances,

and uses a cane sometimes because of her pain and balance issues.  She

states that many of the pain management treatments she has undergone,

including a nerve block trial, trigger point injections, and hydrocodone, have

not alleviated her pain, and in some cases made it worse.  Plaintiff also

testified that she suffers from mental limitations, including difficulty

concentrating or remembering because of "fibro fog," and she experiences

anxiety that contributes to chest pain and panic attacks.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before the Agency

Plaintiff applied for DIB payments under Title II of the Social Security

Act on February 24, 2016.  Administrative law judge ("ALJ") Bruce S. Fein

held an administrative hearing related to that application on April 17, 2018,

and subsequently issued a decision on May 14, 2018, finding that plaintiff

was not disabled.  On December 12, 2019, the Social Security Appeals

Council ("Appeals Council") remanded the case to a new ALJ for rehearing

based on a finding of a potential violation of the Appointments Clause of the U.S. Constitution.  The case was reassigned to ALJ John P. Ramos, who held administrative hearings on July 30, 2020, and March 4, 2021.  ALJ Ramos issued an unfavorable decision on March 25, 2021, finding that plaintiff was not disabled.  That opinion became a final determination of the agency on September 28, 2021, when the Appeals Council denied plaintiff's request for review of the ALJ's decision.

B.    The ALJ's Decision

In his decision, ALJ Ramos applied the familiar, five-step sequential test for determining disability.  At step one, he found that plaintiff engaged in some work after the alleged onset date, but it did not rise to the level of substantial gainful activity.  The ALJ next found at step two that plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform basic work functions, including fibromyalgia, degenerative disc disease of the lumbar spine, asthma, obesity, and degenerative joint disease of the left knee.  As part of his step two finding, ALJ Ramos also concluded that plaintiff's alleged fatty liver disease, diabetes mellitus, and major depressive disorder with anxious distress are not severe impairments.

At step three, ALJ Ramos examined the governing regulations of the

Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed conditions set forth in those regulations, specifically considering Listings 1.02, 1.04, and 3.03, as well as Social Security Rulings ("SSR") 12-2p and 19-2p, which address fibromyalgia and obesity, respectively.

ALJ Ramos next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a range of work at the light exertional level, as defined by the controlling regulations, with the following exceptions:

> the claimant can sit up to eight hours in an eight hour workday at two hour intervals; can stand up to two hours in an eight hour day at one hour intervals; can walk up to two hours in an eight hour day at one hour intervals; is limited to frequent bilateral overhead reaching, and there are no other reaching, handling, fingering, and feeling, or pushing and pulling restrictions; can continuously operate foot controls; can occasionally climb stairs and ramps; no climbing of ladders or scaffolds; can continuously balance; can occasionally stoop, kneel, crouch, and crawl; should not work at unprotected heights or with moving mechanical parts; can continuously operate a motor vehicle; can frequently be exposed to humidity and wetness; should not be exposed to concentrated pulmonary irritants; should not be exposed to extremes of temperature; can frequently be exposed to vibrations; and the claimant would need to change positions at will, but need not leave the workstation or area.

ALJ Ramos went on to step four and concluded that plaintiff is unable to perform her past relevant work.  The ALJ then proceeded to step five and, after eliciting testimony from a vocational expert, found that plaintiff remains able to perform available work in the national economy, citing the representative positions of mail clerk, shipping and receiving clerk, and office helper.  Based upon these findings, ALJ Ramos determined that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on December 2, 2021.[2]  In support of her challenge to the ALJ's determination, plaintiff argues that the ALJ (1) erred in failing to find that her mental impairments were severe at step two, and (2) failed to properly evaluate the opinion evidence in accordance with the applicable regulations, specifically arguing that the ALJ erred in declining to adopt the limitations regarding her ability to sit that were opined by treating physician Dr. Anthony Rotella.  Dkt. No. 11.

Oral argument was conducted in this matter, by telephone, on

---

[2]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the recently enacted Supplemental Social Security Rules and General Order No. 18.  Under those provisions, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

December 21, 2022, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final

decision by the Commissioner is subject to a "very deferential" standard of

review, and is limited to analyzing whether the correct legal standards were

applied, and whether the decision is supported by substantial evidence.

*Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012);

*Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221

F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.

1998).  Where there is reasonable doubt as to whether an ALJ has applied

the proper legal standards, the decision should not be affirmed even

though the ultimate conclusion reached is arguably supported by

substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

If, however, the correct legal standards have been applied, and the ALJ's

findings are supported by substantial evidence, those findings are

conclusive, and the decision will withstand judicial scrutiny regardless of

whether the reviewing court might have reached a contrary result if acting

as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d

255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.    Disability Determination: The Five-Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so,

then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F.

Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d

582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of

his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

If it is determined that it does, then as a final matter, at step five the agency

must examine whether the claimant can do any other work.  *Id.* §§

404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it

becomes incumbent on the agency to prove that the claimant is capable of

performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether

that burden has been met, the ALJ should consider the claimant's RFC,

age, education, past work experience, and transferability of skills.  *Ferraris*,

728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.    <u>Analysis</u>

        1.    <u>The ALJ's Assessment of the Opinion Evidence</u>

Plaintiff argues that the ALJ erred in his assessment of the medical source statement provided by treating physician Dr. Anthony Rotella related to her physical functioning, by impermissibly relying on selective portions of the evidence while ignoring other evidence in the record that supported Dr. Rotella's opined limitations in her ability to sit in particular. Dkt. No. 11, at 11.

Because plaintiff's application was filed prior to March 17, 2017, the prior regulations, which have since been amended, apply to her claim. Under those regulations, the ALJ was required to consider whether the treating physician's opinion was entitled to controlling weight, which must be afforded "so long as it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with (or contradicted by) other substantial evidence in the claimant's case record. *Schillo v. Kijakazi*, 31 F.4[th] 64, 75 (2d Cir. 2022). If it is not entitled to controlling weight, the ALJ must then determine what degree of weight it is otherwise entitled to by considering factors such as (1) the frequency, length, nature, and extent of treatment, (2) the amount of medical evidence supporting the opinion, (3) the consistency of the opinion with the remaining medical evidence, and (4) whether the physician is a specialist. *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019). In making these

findings, the ALJ is required to provide "good reasons" for the weight afforded to the treating physicians' opinions, which the Second Circuit has defined as "reasons supported by substantial evidence in the record. *Schillo*, 31 F.4th at 75 (citing *Estrella*, 925 F.3d at 96).  Moreover, when considering the weight to which the treating physician's opinion is entitled at the second step of this analysis, the ALJ is required to explicitly apply the above factors in his or her analysis; failure to do so is procedural error. *Schillo*, 31 F.4th at 75.  However, such error may be held harmless "if the ALJ has otherwise provided 'good reasons' for its weight assignment" or the court is assured that "'the substance of the treating physician rule was not traversed.'"  *Schillo*, 31 F.4th at 75 (quoting *Estrella*, 925 F.3d at 96).

The record here contains only two opinions related to plaintiff's physical functioning: an opinion from long-time primary care physician Dr. Anthony Rotella, and an interrogatory opinion from a non-examining medical expert, Dr. Janis Eiler.  The ALJ afforded little weight to the opinion from Dr. Rotella and significant weight to the opinion from Dr. Eiler.  AT 23-24.  Although under some circumstances an ALJ is entitled to rely on the opinion of a non-examining source over that of a treating source, I find that the ALJ has not provided sufficiently good reasons for doing so in this case.

In his medical source statement dated June 30, 2020, Dr. Rotella opined that plaintiff can sit for two hours at one time and for about four hours total in an eight hour workday, can stand one hour at a time and stand or walk for about two hours in an eight hour workday, would need to use a cane or walker at times, can lift and carry less than ten pounds frequently, ten pounds occasionally and twenty pounds only rarely, can occasionally twist, rarely stoop, bend or climb stairs, never crouch, squat or climb ladders, rarely engage her neck, and occasionally use her hands, fingers and arms.  AT 2468-70.  Dr. Rotella further opined that her physical conditions would require her to take hourly unscheduled breaks, be off-task more than twenty percent of the workday, and be absent about four days per month.  AT 2470.  In finding that this opinion is entitled to little weight, the ALJ relied on two specific reasons, asserting that (1) it is conclusory because Dr. Rotella did not reference "sufficient clinical diagnostic findings of record to support his conclusions," and stated that at least some of his answers were based on "educated guesses"; and (2) it is "inconsistent with examination findings of record," specifically highlighting the lack of abnormal findings related to her thoracolumbar and cervical spines and the fact that she did not display costovertebral angle tenderness.  AT 23.

Regarding the first reason, which is related to supportability of the opinion, I find that the ALJ's analysis does not appropriately consider what is required by the applicable regulations.  Although any explanation provided by the physician rendering an opinion is one component of the supportability factor, so too is whether the source's own treatment notes or other statements support that opinion.  20 C.F.R. § 404.1527(3).  Yet the ALJ relies only on the fact that Dr. Rotella does not point the reader to evidence that supports his opinion, and does not mention anything about the content of Dr. Rotella's treatment notes.  The ALJ does include a recitation of certain pieces of treatment evidence in his general RFC analysis, yet, in this case, to the extent he discusses some of Dr. Rotella's treatment records within that recitation, it is not clear how any such records, much less other records from Dr. Rotella that the ALJ did not discuss, support an overall finding that Dr. Rotella's opinion is unsupported.  Merely relying on the lack of explanation by Dr. Rotella and a three-page summary of some of the evidence does not suffice in this case, where Dr. Rotella treated plaintiff throughout the entirety of the approximately six-year relevant period and the record contains thousands of pages of treatment records.

Further, the ALJ's reliance on Dr. Rotella's notation that at least some of his opined limitations were based on "educated guesses" as a reason for finding it to be unsupported requires some examination. It is true that highlighting the fact that the limitations were based on educated guesses aligns with the ALJ's point that the physician failed to provide any indication of what specific evidence supports his conclusions and that his opinion may not have been based fully on concrete documented medical findings. Yet, it is inescapable that the "educated" part of an "educated guess" made by a treating physician would be based on that physician's own experience treating the plaintiff. Indeed, that is the reason why the applicable regulations give favorable deference to treating providers: that is, because they have special knowledge of the plaintiff's condition based on their longitudinal treatment relationship. The ALJ himself acknowledged, in a different paragraph of his decision, that "Dr. Rotella provided the claimant with treatment on a regular basis for an extended period of time." AT 23. "Educated guess," in the context of a treating physician, does not mean that the opinion was fabricated out of whole cloth or based on mere speculation. Rather, it appears to represent an explanation by Dr. Rotella that, although he could not say with certainty what plaintiff's exact capabilities are, his opinion represented his best assessment of those

limitations based on his knowledge and familiarity with her conditions, symptoms, and treatment history.  Therefore, to the extent the ALJ relied on the statement that the opinion was based on "educated guesses" to support why that opinion deserved lesser weight without seemingly accounting for what that actually means in the context of a treating physician, I find it not to constitute a sufficiently good reason to find Dr. Rotella's opinion to be unsupported.

The ALJ's second rationale also fails to constitute a good reason supported by substantial evidence to support his decision to afford little weight to Dr. Rotella's opinion as a whole.  The ALJ states, in a conclusory fashion, that this opinion "is inconsistent with examination findings of record."  AT 23.  He cites a few examples to support that rationale, but those examples do not provide a persuasive indication of how his rejection of the totality of this opinion is supported by substantial evidence.  Notably, the ALJ acknowledges that plaintiff displayed "tenderness on palpation of the lumbar spine and decreased range of motion," but that findings in her thoracolumbar and cervical spines were normal.  AT 23.  Similarly, he acknowledges that she was observed to have muscle spasms in her lower back, but not in her upper or middle back.  *Id.*  Although these citations to certain findings in the record might provide some support for the rejection

17

of certain limitations, they notably provide nothing to support the rejection of limitations that were related to plaintiff's low back and hips; the fact that plaintiff might not have had symptoms noted often in her upper and middle back in no way undermines the fact that she did show symptoms in her lower back area.  Further, as to the last example cited, it is not clear how the absence of costovertebral angle tenderness in particular would lead to the conclusion that plaintiff cannot have the functional limitations opined by Dr. Rotella.  These cited examples simply do not provide a sound basis for finding that the totality of Dr. Rotella's opinion, particularly those portions opining limitations related to sitting, standing, walking, and postural activities that rely on the low back and legs, merits little weight.

As was discussed above, the ALJ did provide a three-page discussion of some of the evidence in the record.  However, I find that such discussion does not suffice to fill in the gap in the ALJ's explanation in this case for multiple reasons.  First, and foremost, is the fact that the ALJ's discussion of the evidence relies heavily on what objective findings were noted on certain examinations.  To the extent that the discussion of some pieces of evidence was representative of the general types of findings in the voluminous treatment record, it is not clear that those objective findings can constitute a sufficient basis for the ALJ's rejection of Dr. Rotella's

opinion given that her primary impairment causing her pain appears to be

fibromyalgia, and possibly also her connective tissue disease.  Courts

within the Second Circuit have made clear that the functional effects of

fibromyalgia are not generally amenable to objective observations, and

therefore it is improper to rely on a lack of objective findings when

assessing the effect of that impairment.  *See Green-Younger v. Barnhart*,

335 F.3d 99, 108 (2d Cir. 2003); *Campbell v. Colvin*, 13-CV-0451, 2015 WL

73763, at *6 (N.D.N.Y. Jan. 6, 2015) (Hines, M.J., Sharp, C.J.); *Mushtare v.

Astrue*, 06-CV-1055, 2009 WL 2496453, at *7 (N.D.N.Y. Aug. 12, 2009)

(Bianchini, M.J., Kahn, J.).  To the extent that a discussion of evidence in a

decision can sometimes be used to supplement a more conclusory

statement by the ALJ that an opinion is inconsistent with the record

evidence, I find that the heavy focus on the objective findings in the ALJ's

discussion here prevents such an extrapolation in this case.

There are further problems with the ALJ's overall analysis of the

record evidence that would caution against a conclusion that the ALJ's

findings regarding whether the record is consistent with Dr. Rotella's

opinion is supported by substantial evidence.  In discussing why he

afforded significant weight to the opinion from Dr. Eiler, the ALJ noted that

records from January 2021 indicated that plaintiff's fibromyalgia was

"stable." AT 24. However, stable does not imply the absence of symptoms, even debilitating ones, but rather merely indicates that the condition is not changing at that time. The treatment record that the ALJ relies on for this was a telehealth appointment related to issues regarding a new medication plaintiff had started to manage her diabetes, and which cites a notation from a previous visit with Dr. Rotella that plaintiff's fibromyalgia is stable and that she has been following up with her rheumatologist for that on a regular basis. AT 2851-53. At her most recent documented rheumatologist appointment in August of 2020, plaintiff continued to report progressive constant stiffness, puffiness and pain in her arms, wrists, knees, and back with days where she has been unable to get up due to the pain. AT 2761. It is therefore not clear that the fact that plaintiff's fibromyalgia was noted to be stable is an indication that it was not producing significant symptoms.

The ALJ further stated that plaintiff has treated her musculoskeletal symptoms "very conservatively," presumably as a reason for why greater limitations than those accounted for in the RFC were not warranted, yet this rationale ignores the notations in the record that she (1) had tried many different treatment modalities, including various injections and medication, without benefit and even some worsening in her pain post treatment, and

(2) had a clotting disorder that put her at high risk of developing another embolism if she underwent any surgeries, and therefore the decision whether to perform any surgery for her lumbar spine impairment was far more complicated than whether that surgery was warranted or not.  AT 1722 (orthopedic physician discussing the possibility of spinal surgery, stating that "she could almost plan on having a blood clot given her history of having blood clots after [two] relatively routine gynecologic surgeries," and acknowledging that her clotting disorder, "makes her a very complicated patient, indeed").  Further, in relying on the allegedly conservative nature of her treatment, the ALJ fails to indicate what type of greater or non-conservative treatment plaintiff should have been expected to receive related to her fibromyalgia.

The ALJ next stated that chiropractic records indicate that plaintiff was responding well to therapy.  AT 23.  Although her chiropractor, with whom she had four documented visits in 2016, did indicate that she had a fair prognosis because she "has responded well to her chiropractic care," the other portions of the same treatment notes indicate that she consistently reported having slightly worse issues at each visit and she was observed as having decreased range of motion in her lumbar spine, pain with movements, severe spasms in her legs and lower back, severe trigger

points in her legs and lower back, severe muscle weakness in the right side of her lower back, and tender taut fibers in her legs and lower back; she further generally reported that, after treatment, she felt only "slightly better." AT 1378, 1379, 1381, 1383.

Lastly, the ALJ relies on the fact that plaintiff has not been complaint with appointments or medication, citing essentially a single medical record for each of those assertions. AT 23. As to non-compliance with appointments, the ALJ cites to letters indicating plaintiff missed appointments with her hematology provider on April 5, and April 13, 2016. AT 1321-22. It is not clear, however, how two instances of noncompliance in a record spanning nearly six years and over two thousand pages is indicative of anything regarding the extent of plaintiff's functional limitations. Further, the ALJ's citation to a presumed instance of relevant medication noncompliance is an entirely contextless notation in a treatment note from March of 2015 that simply includes "medication noncompliance" in a list of impressions from the visit. AT 1387. Based on all of these examples, I conclude that the ALJ's discussion of the evidence does not provide a reliable basis for his rejection of Dr. Rotella's opinion. Rather, it suggests that the ALJ engaged in an inappropriately selective assessment of the

record evidence that cannot constitute substantial evidence to support his findings.

There are other notable questions raised by the ALJ's analysis of plaintiff's physical functioning.  The ALJ afforded significant weight to a previous statement from Dr. Rotella, dated June 30, 2016, that plaintiff is restricted to lifting ten pounds, explaining that that opinion is supported by the diagnostic images in the record, plaintiff's course of care, and his extended treatment relationship with plaintiff.  The ALJ found that this opinion supports the conclusion that plaintiff is capable of performing sedentary work, yet the ALJ ultimately found that plaintiff is capable of performing a range of light work, which by definition requires an ability to lift up to twenty pounds.[3]  AT 23; *see* 20 C.F.R. §404.1567(b).  Given that the ALJ did not seemingly adopt a limitation to lifting and carrying ten pounds, it is not clear why the ALJ afforded this opinion significant weight, or how he accounted for the fact that he did.  Although an ability to perform sedentary work would not, by itself, be indicative of disability, I note that all of the jobs

---

[3]     The ALJ's hypothetical question at the hearing that produced testimony about the relevant jobs notably includes a statement by the ALJ that "we'll start out at the light exertional level insofar as lift and carry are concerned and as they're defined in the Agency's regulations," after which he never provided an alternate specification of the capacity to lift and carry.  AT 56-57.  The RFC therefore appears to encompass an ability to lift and carry up to twenty pounds.

identified by the vocational expert, which the ALJ relied on at step five, are at the light exertional level, and therefore the ALJ's failure to explain the discrepancy between affording significant weight to this opinion and then finding plaintiff had a greater lifting capacity undermines the basis for the ALJ's step five finding.  *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (noting that the burden shifts to the Commissioner at step five to show that there is other work that the claimant can perform).

Based on the above errors in assessing the opinions of treating physician Dr. Rotella, I find that remand is warranted for further administrative proceedings, most notably for a proper consideration of both the record evidence and Dr. Rotella's opinions pursuant to the treating physician rule.

### 2.  The ALJ's Assessment of Plaintiff's Mental Impairments

Because I have already found that remand is warranted based on the ALJ's assessment of Dr. Rotella's opinion regarding plaintiff's physical functioning, I find that a detailed assessment of plaintiff's arguments regarding her mental impairments is not necessary.  I note, however, that the only two opinions in the record regarding mental functioning are from Dr. Rotella, who, along with colleague Dr. Anne Filipski, treated the plaintiff

for her depression and anxiety for a lengthy period of time, and a consultative examiner who examined plaintiff in November 2020, more than five years after the start of the relevant period and during a time when plaintiff's mental health issues in general were noted to be more controlled and stable.  Because the ALJ's broadly deficient analysis of the physical evidence calls into question the legitimacy of his findings regarding the mental evidence, I direct the agency to conduct a careful analysis of the mental opinion evidence as well, particularly keeping in mind the context in which each of the two relevant opinions were rendered.

## IV.   SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the determination did not result from the application of proper legal principles and is not supported by substantial evidence.  Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be GRANTED, defendant's motion for judgment on the pleadings (Dkt. No. 12) be DENIED, the Commissioner's decision be VACATED, and this matter be remanded for further proceedings consistent with this decision and order, without a directed finding of disability, pursuant

to sentence four of 42 U.S.C. § 405(g).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:    January 3, 2023
          Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge